■ CAMALLOY WIRE, INC., Individually and as Assignee of GREYLAG TECHNICAL SERVICES, INC., and Another, Respondent, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,

PA., Doing Business as NATIONAL UNION INSURANCE COMPANY, Appellant, et al., Defendants. [651 NYS2d 519] —Order, Supreme Court, New York County (Herman Cahn, J.), entered May 2, 1995, which, *inter alia,* denied defendant's motion to dismiss the complaint, unanimously modified, on the law, and the motion granted except as to that portion of the complaint seeking insurance proceeds for damages attributable to the August 1989 oil spill, and, except as so modified, affirmed, without costs.

In early 1989, plaintiff Camalloy Wire, Inc., hired an environmental contractor, Greylag Technical Services, Inc., to decommission one of plaintiff's manufacturing sites. The project, *inter alia,* entailed removal of a 10,000-gallon underground fuel tank and other non-PCB wastes. In connection with its performance of its contract with plaintiff, Greylag purchased a pollution insurance policy from defendant National Union Insurance Company of Pittsburgh. On or about August 11, 1989, while removing the fuel tank, Greylag, or possibly a subcontractor, left a manhole open at the jobsite. Rain thereafter flooded the jobsite causing heating oil to escape from an uncapped tank and spill into a nearby creek. The spill was attended to by the Coast Guard which then sought to recover the $33,800 cost of the cleanup from plaintiff. Plaintiff, in turn, commenced a Federal court action against Greylag in which it sought to recover not only the cleanup costs with which it had been assessed by the Coast Guard but additional cleanup related expenses. Also included in the Federal court complaint against Greylag was a breach of contract cause of action alleging that Greylag had not fully discharged asbestos removal obligations it undertook pursuant to the parties' agreement, and a claim for damages arising from Greylag's negligent operation of machinery at the jobsite. Although the Federal action concluded with a judgment in plaintiff's favor, the judgment could not be satisfied. Plaintiff, thereafter, as assignee of Greylag's interest under the aforementioned pollution insurance policy,[1] commenced the present action against Greylag's insurer, present defendant National Union. The complaint against National Union, in addition to seeking insurance proceeds to cover those damages claimed in the Federal court complaint, seeks insurance proceeds for costs arising from an oil spill which occurred in June 1991. This more recent spill was allegedly caused by Greylag's failure to cap pipes leading to the site of the by then removed oil tank.

---

1. Plaintiff was not named as an additional insured under the policy issued to Greylag.

The policy issued by defendant National Union to Greylag covered the insured only for claims made between March 13, 1989 and March 13, 1990, but the policy included, under the rubric of "claims made", additional claims sharing with "claims made", "the same, interrelated, associated, repeated or continuous acts or omissions".

It is undisputed that defendant received a timely claim from its insured, Greylag, respecting the August 1989 spill.[2] It is, however, equally clear that no distinct claim was made within the policy period for coverage for damages arising from the remaining breaches of duty and contract covered by the Federal court judgment. Nevertheless, plaintiff, in reliance on the above cited policy language, maintains that its remaining claims are subsumable within the claim for the August 1989 spill and, hence, that, as to each award of damages within the Federal action, a claim was in fact made within the policy period.

While the motion court was of the view that the subsumability of the remaining claims within the claim indisputably made presented a question of fact precluding summary adjudication, we disagree. It is clear that the August 1989 spill caused by the failure to cover a manhole and the June 1991 spill caused by the failure to cap a defunct oil pipe were entirely unrelated and, accordingly, that a claim for the former could not have constituted fair notice to the insurer of the latter. While both incidents occurred during Greylag's performance of its contract with plaintiff, plainly that circumstance alone does not render the two temporally distant and otherwise dissimilar occurrences sufficiently related to be covered by a single notification to the insurer. To admit the contrary proposition would, as a practical matter, radically recast the subject "claims made" policy into one covering any occurrence within the contract's performance, and that, of course, is something we may not do.

For the same reasons, plaintiff's claims for unperformed asbestos removal and structural damage cannot be said to have been timely interposed with defendant insurer. Moreover, even if these claims had been made within the policy period, it is clear that they relate to categories of damage not covered by the subject policy. Defendant's policy does not insure against mere negligence or default of contractual obligation, but only

---

2. Defendant, in seeking dismissal of the entire complaint, does not dispute that it received timely notice of the August 1989 spill. Its claim is rather that plaintiff's damages did not exceed the $50,000 self-retention provision of the policy. The extent of plaintiff's damages from the August 1989 spill, however, is a matter appropriately left for trial.

against nonfeasance or misfeasance resulting in damages attributable to pollution. Neither the failure of Greylag to remove asbestos in accordance with its contract nor its negligence in the operation of machinery at the jobsite resulted in pollution or damages attributable thereto. Concur—Murphy, P. J., Milonas, Wallach, Rubin and Mazzarelli, JJ.